**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

| | |
|---|---|
| ANGELA DUNCAN | * |
| | * |
| Plaintiff | * |
| | * |
| VS. | * |
| | *   NO: 2:05CV00233 SWW |
| ARKANSAS DEPARTMENT OF | * |
| COMMUNITY CORRECTION, ET AL. | * |
| | * |
| Defendants | * |

## ORDER

Plaintiff Angela Duncan ("Duncan") brings this employment discrimination action against the Arkansas Department of Community Correction ("DCC") and DCC employees G. David Guntharp ("Guntharp"), Paul Brown ("Brown"), and Verter Howard ("Howard"). Before the Court is Defendants' motion for summary judgment (docket entry #24). The time for responding has passed, and Duncan has not filed a response. After careful consideration, and for the reasons that follow, the motion for summary judgment will be granted, and this case will be dismissed with prejudice.

**I.**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).

## II.

The following facts, taken from Defendants' statement of material facts, are undisputed.[1] Duncan began working for the DCC on November 5, 2001. Initially, Tony Henderson, a Caucasian male, served as Duncan's supervisor. Defendant Howard, an African-American female, took over as Duncan's direct supervisor after Henderson complained that Duncan had a bad attitude, and he was having difficulty working with her. Docket entry #26, ¶ 2; docket entry #24, Ex. #3 (hereinafter, Howard Aff.), ¶ 3.

Duncan's written performance evaluation for the period November 5, 2001 through November 4, 2002 indicates that she performed at an unsatisfactory level in the area of communication. The evaluation reads, in part, as follows: "On several occasions, it was necessary to take time to deal with difficulties related to the lack of communication or understanding between Angela and her first supervisor and [her] current supervisor." Docket

---

[1] Local Rule 56.1 provides that a party moving for summary judgment must submit a statement of the material facts as to which it contends there is no genuine issue to be tried, and the non-moving party must file a responsive statement of the material facts as to which it contends a genuine issue exists to be tried. "All material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . . " Local Rule 56.1(c).

entry #24, Ex. 3B.

On February 18, 2003, Duncan received a written warning from Howard, stating that Howard would "no longer accept or tolerate [Duncan's] combative, uncooperative, disrespectful, and generally, unprofessional way of communicating." Docket entry #24, Ex. #3C. The warning states: "Continued display of improper communication during and beyond this period will subject you to more severe personnel action up to and including termination." *Id.*

On March 21, 2003, during Duncan's three-month probationary period, Howard issued a memo placing Duncan on disciplinary leave for three days, without pay. *See* docket entry #24, Ex. #3D. The memo states that on March 20, 2003, Duncan refused Howard's request to come to her office and continued her "combative, disrespectful, unreasonable, and unprofessional method of communication." *Id.*

On July 29, 2003, Duncan was transferred to work under the direction of Defendant Brown, a white male. In a written performance evaluation for the period ending November 5, 2004, Brown wrote: "In my opinion, Angela needs to treat other staff members more respectfully and courteously, and try to engage in more open and honest dialogue, rather then display an attitude of indignation or indifference." Docket entry #24, Ex #4A. Duncan wrote a note at the end of Brown's written evaluation, stating that she was graded unfairly. She wrote: "I believe that the manager is holding a grudge and this retaliation [is because] of lack of management skills. I am treated differently from the rest of the staff and that is discrimination. This is retaliation and discrimination." *Id.*

On January 6, 2005, Brown issued Duncan a disciplinary warning and placed her on three months of probation for violating multiple DCC policies. See docket entry #24, Ex. #4

(hereinafter "Brown Aff."), ¶¶ 6-12; docket entry #24, Ex. #4B. The violations included submitting a false time sheet and using her computer for non-work related activities. Docket entry #24, Ex. #4B. Duncan noted her objections in writing on the warning, stating that Brown issued the warning in retaliation for her written objections to her performance evaluation. *Id.* After Duncan was placed on probation, she continued to use her computer for personal activities, including "outsourcing" work and starting her own public relations firm. *See* Brown Aff., ¶ 14; docket entry #24, Ex. #4G.

Howard conducted an investigation regarding Duncan's complaint that Brown had discriminated and retaliated against her. *See* Howard Aff, ¶ 7, docket entry #24, Ex. 3F. Duncan complained to Howard that much of Brown's discriminatory conduct occurred in the presence of her co-workers, and Howard interviewed Duncan's co-workers. However, none of the employees interviewed confirmed Duncan's allegations. Howard Aff., ¶ 8.

In February 2005, Duncan was informed that she lacked sufficient accumulated sick leave to cover recent absences. In an e-mail communication to Brown dated February 16, 2005, Duncan indicated that she intended to take sick leave and would not comply with the Department's sick leave policy. Docket entry #24, Ex. 4H. By letter dated February 18, 2005, Brown terminated Duncan's employment. Docket entry #24, Ex. 4J. The letter states in part: "Your current probationary status and your refusal yesterday to conduct yourself in a professional manner . . . leaves me no choice but to terminate your employment." *Id.*

### III.

In her complaint, Duncan alleges that (1) Guntharp, the Director of the DCC, "allowed a pervasive atmosphere of racial discrimination to permeate the [DCC];" (2) Brown terminated her

employment on the basis of her race and gender; (3) Howard "encouraged, promoted and gave counsel" to white employees that were similarly situated to her; (4) Brown terminated her employment in retaliation for her complaints regarding discriminatory employment practices; and (5) Brown denied her sick leave benefits because of her gender.  The Court construes Duncan's allegations as claims for (1) hostile work environment; (2) wrongful termination based on race and gender; (3) disparate treatment based on race; (4) retaliation; and (5) disparate treatment based on gender.  Duncan seeks compensatory and punitive damages and injunctive relief under Title VII and the ACRA.[2]

**Hostile Work Environment**

Defendants assert that Duncan has failed to come forward with any facts to support a hostile environment claim, and the Court agrees. To establish a *prima facie* case of racial discrimination based on a hostile work environment, a plaintiff must establish that (1) she is a member of a protected group, (2) unwelcome harassment occurred, (3) a causal nexus existed between the harassment and her protected-group status, and (4) the harassment affected a term, condition, or privilege of her employment.  See *Carter v. Chrysler Corp*., 173 F.3d 693, 700 (8th Cir.1999).   Duncan's allegations regarding a hostile work environment are general and conclusory, and she has failed to come forward with any evidence regarding actions on the part

---

[2]The Court reviews Duncan's claims under the Arkansas Civil Rights Act and Title VII using the same standards.  See *Merritt v. Albemarle Corp*.  496 F.3d 880, 883 (8th Cir. 2007)(citing *Henderson v. Simmons Foods, Inc*., 217 F.3d 612, 615 n.3 (8th Cir.2000); *see also Island v. Buena Vista Resort*, 352 Ark. 548, 103 S.W.3d 671, 675-76 (2003) (stating that Arkansas courts will look to "Title VII and federal cases interpreting Title VII for guidance on sexual-harassment claims brought pursuant to the Arkansas Civil Rights Act ").

of supervisors or coworkers that she claims amounted to unwelcome harassment. The Court finds no genuine issues for trial on this claim.

### **Wrongful Termination**

Because Duncan presents no evidence that clearly points to the presence of an illegal motive for her termination she "must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004). Under the three-stage order of proof set forth in *McDonnell Douglas*, Duncan must first establish a prima facie case of discrimination by showing (1) membership in a protected group, (2) that she met the legitimate expectations of her employer, (3) that she suffered adverse employment action, and (4) facts that permit an inference of discrimination. *Id*. If Duncan establishes a prima facie case, the DCC must articulate a legitimate, nondiscriminatory reason for her termination. *Rothmeier v. Investment Advisers, Inc*., 85 F.3d 1328, 1332 (8th Cir. 1996). Finally, the burden shifts back to Duncan to show that the proffered reasons are pretextual and that discrimination based on race or gender was the real reason for her termination.

Defendants argue that Duncan's termination was the direct result of "numerous incidents of misconduct which included insubordination, making false statements on her time sheet, and doing non-DCC work on DCC time." Docket entry #25, at 23. Defendants provide declarations by Howard and Brown and the DCC's human resource administrator that corroborate the asserted reason for terminating Duncan's employment. *See* docket entry #24, Exs. #3, #4, #6. Because the DCC has asserted a legitimate reason for Duncan's termination, the Court will

assume the existence of a prima facie case and move directly to the issue of pretext.[3]

Duncan has failed to present any evidence of pretext or evidence that would enable a reasonable juror to conclude that the decision to terminate her employment was motivated by race or gender discrimination.  Accordingly, no genuine issues exist for trial with respect to Duncan's wrongful termination claim.

### **Disparate Treatment Based on Race**

To establish discrimination based on disparate treatment, Duncan must show, among other things, that similarly situated employees that were not members of her protected class were treated differently.  See *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005).  Duncan "bears the burden to proffer 'specific, tangible evidence' that employees who were 'similarly situated in all respects' to [her] received different treatment from [the DCC]."  *Id.* (quoting *Rose-Maston v. NME Hosp., Inc.,* 133 F.3d 1104, 1109 n. 4 (8th Cir.1998) (first quote); *Gilmore v. AT&T,* 319 F.3d 1042, t 1046 (second quote)).

Defendants assert that Plaintiff has failed to establish that she was treated differently than similarly-situated white employees, and the Court agrees.   In the complaint, Duncan alleges that white employees "did not suffer accusation, attack, and accusation of the nature suffered by [her]."  Docket entry #1, ¶ 41.  She also alleges that Howard encouraged white employees and continually "harassed, harangued, and threatened" her.  *Id*., ¶ 16.  Duncan's general and conclusory allegations regarding disparate treatment fail to create genuine issues for trial.

---

[3]"[I]f an employer has articulated a legitimate reason for its actions, it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext and the determinative issue of causation when bypassing the prima facie case analysis leads to clarity in framing the issue under review."  *Stewart v. Independent School Dist. No. 196,* 481 F.3d 1034, 1043 (8th Cir. 2007).

**Retaliation**

In support of her retaliation claim, Duncan alleges as follows:

That the plaintiff had previous to February 17, 2005, utilizing her First Amendment right, vocalized her opposition to [what] she believes to be violations of Title VII . . . . [Plaintiff's] . . . firing was based upon the combination of her race, sex, and as a retaliation of her previous grievances against the discriminatory employment practice of the defendant agency.

Docket entry #1, ¶ 4.

To succeed with a retaliation claim, Duncan must show that (1) she engaged in protected conduct; (2) a reasonable employee would have found the challenged retaliatory action materially adverse;[4] and (3) the materially adverse action was causally linked to the protected conduct. *See Stewart v. Independent School Dist. No. 196,* 481 F.3d 1034, 1043 (8th Cir. 2007). If Duncan establishes a prima facie case, the burden shifts to the DCC to show a non-retaliatory reason for Duncan's termination. *Id.* If the DCC meets this burden of production, the burden returns to Duncan who must present evidence that "'(1) creates a question of fact as to whether [defendant's] reason was pretextual and (2) creates a reasonable inference that [defendant] acted in retaliation.'" *Id.* (quoting *Logan v. Liberty Healthcare Corp.,* 416 F.3d 877, 880 (8th Cir. 2005)).

As previously explained, the DCC has met its burden to show non-discriminatory and non-retaliatory reasons for Duncan's termination, and Duncan has failed to rebut the showing. Accordingly, Duncan's retaliation claim cannot proceed.

**Disparate Treatment Based on Gender**

---

[4]Until recently, as part of a prima facie case of retaliation, the Eighth Circuit required plaintiffs to show "an adverse action" which produced a "material employment disadvantage." *Higgins v. Gonzales,* 481 F.3d 578, 589 (8th Cir. 2007)(citations omitted).

Duncan alleges that "because of her sex she was denied sick leave and threatened with termination if [she] pursued her request for sick leave or took leave without permission . . . [, and] on numerous occasions male employees of the section in which [she] was employed [were] granted leave with or without pay when they were ill."  Docket entry #1, ¶¶ 27-28.  Defendants assert that Duncan has failed to come forward with specific evidence that employees who were similarly situated to her in all respects received different treatment with respect to sick leave.[5]  The Court agrees and finds that the claim must be dismissed.

**IV.**

For the reasons stated, Defendants' motion for summary judgment (docket entry #24) is GRANTED.  There being no issues remaining for trial, pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 18TH DAY OF JANUARY, 2008.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[5] Additionally, Defendants have come forward with evidence that Brown only advised Duncan of the agency's sick leave policy, *see* docket entry #24, Ex. 4, and took no adverse action against Duncan with respect to sick leave issues. *See Higgins v. Gonzales*, 481 F.3d 578, 584 (8th Cir. 2007)(quoting *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1016-17 (8th Cir.1999)("'[An] adverse employment action must be one that produces a material employment disadvantage.'")).